UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

KENNETH BROWN,

        Plaintiff,

v.

THE STATE OF NEW YORK, SUPERINTENDENT T. STITCH, ADMIN DEPT. S. DURFEE, SECURITY DEPT. C. YEHL, PROGRAMS DEPT. M. HILL, SUPERVISOR MR. CABRERA, LAW LIBRARY OFFICER JOHN DOE (1), (2), STATE INSPECTORS JOHN DOE (1), (2), JANE DOE (1), (2), THE COMPANY OF KAPLEN & SCHMIDT "ELECTRICAL", JOHN DOE (1), (2) (THE COMPANY OF COGENIC MECHANICAL), JANE DOE (1), (2) (THE COMPANY OF COGENIC MECHANICAL), THE COMPANY OF BETLEM HEATING AND AIRCOOLING (JOHN DOE (1), (2) OR JANE DOE (1), (2)),

        Defendants.

Case # 20-CV-6042-FPG

DECISION AND ORDER

## INTRODUCTION

*Pro se* Plaintiff, Kenneth Brown, was previously confined at the Wyoming Correctional Facility ("Wyoming").[1] He filed a Complaint asserting claims under 42 U.S.C. § 1983 alleging that Defendants subjected him to unconstitutional conditions of confinement. ECF No. 1. He has also applied to proceed *in forma pauperis*, ECF No. 2, and moved for appointment of counsel, ECF No. 3.

---

[1] Since filing his Complaint, Plaintiff has been conditionally released to parole. ECF No. 4; *NYS DOCCS Inmate Lookup*, http://nysdoccslookup.doccs.ny.gov/ (last visited June 25, 2020).

1

Because Plaintiff has met the statutory requirements of 28 U.S.C. § 1915(a), he is granted permission to proceed *in forma pauperis*. Therefore, under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(a), the Court must screen Plaintiff's Complaint. For the reasons that follow, Plaintiff's claims will be dismissed under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A unless he files an amended complaint as directed below.

## DISCUSSION

### I. Legal Standard

Section 1915 "provide[s] an efficient means by which a court can screen for and dismiss legally insufficient claims." *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007). The court shall dismiss a complaint in a civil action in which a prisoner seeks redress from a governmental entity, or an officer or employee of a governmental entity, if the court determines that the action (1) fails to state a claim upon which relief may be granted or (2) seeks monetary relief against a defendant who is immune from such relief. *See* 28 U.S.C. § 1915A(b). Generally, the court will afford a *pro se* plaintiff an opportunity to amend or to be heard prior to dismissal "unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would succeed in stating a claim." *Abbas*, 480 F.3d at 639 (internal quotation marks omitted). But leave to amend pleadings may be denied when any amendment would be futile. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

In evaluating the Complaint, the Court must accept all factual allegations as true and must draw all inferences in Plaintiff's favor. *See Larkin v. Savage*, 318 F.3d 138, 139 (2d Cir. 2003) (per curiam). "Specific facts are not necessary," and a plaintiff "need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (omission in original) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555

2

(2007)); *see also Boykin v. Keycorp*, 521 F.3d 202, 213, 216 (2d Cir. 2008) (discussing pleading standard in *pro se* cases after *Twombly*: "even after *Twombly*, dismissal of a *pro se* claim as insufficiently pleaded is appropriate only in the most unsustainable of cases"). Although "a court is obliged to construe [*pro se*] pleadings liberally, particularly when they allege civil rights violations," *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004), even pleadings submitted *pro se* must meet the notice requirements of Rule 8 of the Federal Rules of Civil Procedure. *Wynder v. McMahon*, 360 F.3d 73, 80–81 (2d Cir. 2004).

## II.     Plaintiff's Allegations[2]

Plaintiff was transferred to Wyoming on February 18, 2017 and assigned to the D-2 housing unit. ECF No. 1 at 3. The unit was "in very bad condition," and prison officials were in the process of repairing all the housing units, bathrooms, showers, plumbing, and lighting. *Id*. at 3–4. On September 5, 2018, Plaintiff was moved to the C-2 unit, which was newly renovated. *Id*. at 4. After two weeks in the C-2 unit, Plaintiff "started to notice the build up of what appeared to be black soot/mold on the bathroom ceiling" caused by inadequate ventilation. *Id*. (emphasis removed). Every time Plaintiff used the bathroom or showers he experienced "stomach aches[] and bad head aches [sic]" and his skin became dry and itchy after he washed his hands or face. *Id*. He also noticed "fungus" on his feet and under his toenails. *Id*. Plaintiff attended sick call and was given lotion and ointment for his skin and told to take pain medication for his headaches. *Id*. Plaintiff was given foot cream for the "fungus," which was not effective. *Id*.

On November 12, 2018, Plaintiff told Correctional Officer George that the inmates should not be living with the mold problem. *Id*. at 8. George "then got on the phone and called someone."

---

[2] The recitation of facts is drawn from the Complaint, the contents of which must be accepted as true for purposes of initial review under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b). *See Erickson*, 551 U.S. at 93–94.

3

*Id*. A maintenance crew was sent to the unit, but they did nothing for about two or three weeks. *Id*. at 5, 8. The mold continued growing on the ceiling and down the walls, the color changed from brown to grey to black and areas of the ceiling still had black spots as of March 1, 2019. *Id*. Plaintiff and other inmates attempted to clean it up but were told to stop and were otherwise not given any bleach or cleaning supplies to properly clean the mold. *Id*. at 5. In July 2019, inmates were temporarily moved out of the C-2 unit while moldy sheet rock was removed and the ceiling was redone, and inmates were then moved back into the unit. *Id*. at 13.

Plaintiff also states that windows in the unit needed to be repaired during this time period because cold air penetrated the windows in the winter, causing consistent cold temperatures in the housing units. *Id*. at 9–10. Plaintiff further claims that, on November 12, 2018, Plaintiff "was [d]iscriminated against" by not being allowed to work in the law library as a Clerk, even though Plaintiff has a "legal Research Certificate to work as a clerk in any law library in the City and State of New York Correctional Facility." *Id*. at 9.

As a result of these conditions, Plaintiff experienced pain and suffering from physical injuries, including headaches and injuries to his chest and feet; medical expenses; and "mental anguish." *Id* at 11. Plaintiff believes he will continue to suffer for some time. *Id*. Plaintiff sent a letter to Superintendent Stitch and filed grievances regarding the mold in the C-2 unit showers and the denial of law library work. *Id*. at 5–6, 9, 20, 23, 26, 31. Plaintiff claims Superintendent Stitch never responded to his grievances. *Id.* at 5–6, 9.

### III.   Constitutional Claims

"To state a valid claim under 42 U.S.C. § 1983, the plaintiff must allege that the challenged conduct (1) was attributable to a person acting under color of state law, and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States."

*Whalen v. County of Fulton*, 126 F.3d 400, 405 (2d Cir. 1997). "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (citing *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985)).

    A.    *Defendants State of New York and Defendants Named in Their Official Capacities*

In this action, Plaintiff brings suit against the State of New York and multiple individual defendants in their official capacities. The Eleventh Amendment, however, bars federal court claims against states, absent their consent to such suit, an express statutory waiver of immunity, or valid congressional override of immunity. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–100 (1984). The Eleventh Amendment bar extends to state officials sued in their official capacities. *Kentucky v. Graham*, 473 U.S. 159, 166–67 (1985). "An official arm of a state enjoys the same Eleventh Amendment immunity from suit in federal court as is enjoyed by the state itself." *Posr v. Court Officer Shield # 207*, 180 F.3d 409, 414 (2d Cir. 1999); *see also Woods v. Rondout Valley Cent. Sch. Dist. Bd. of Educ.*, 466 F.3d 232, 236 (2d Cir. 2006) (Eleventh Amendment immunity extends to "state agents and state instrumentalities that are, effectively, arms of a state" (internal quotation marks omitted)). Plaintiff's claims against the individual defendants in their official capacities are thus barred by the Eleventh Amendment. *See Kentucky*, 473 U.S. at 165–67, n.14; *Halderman*, 465 U.S. 89 at 199–201. "[N]either a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will*, 491 U.S. at 71; *Gaby v. Bd. of Trustees of Cmty. Tech. Colleges*, 348 F.3d 62, 63 (2d Cir. 2003). Accordingly, any claims against the State of New York and any Defendant in his or her official capacity are dismissed.

### B.     *Defendants Stitch and Durfee*

As an initial matter, Plaintiff has failed to establish the personal involvement of Defendants Superintendent Stitch and Administrator Durfee. Plaintiff alleges that Stitch and Durfee were put on notice of the discrimination and mold, by way of Plaintiff's letter and grievances, and never responded to them or otherwise corrected the problems. ECF No. 1 at 6, 9. He argues Stitch failed to follow the Department of Correction and Community Supervision's ("DOCCS") own policies and procedures to clean and remove mold and that his inaction constitutes a failure to train or supervise subordinates. *Id*. at 6.

To establish liability against an official under Section 1983, a plaintiff must allege that individual's personal involvement in the alleged constitutional violation; it is not enough to assert that the defendant is a link in the chain of command. *See McKenna v. Wright*, 386 F.3d 432, 437 (2d Cir. 2004); *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995). Moreover, the theory of *respondeat superior* is not available in a Section 1983 action. *Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003). A supervisory official can be personally involved in an alleged constitutional violation in one of several ways:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

*Colon*, 58 F.3d at 873.

Plaintiff wrote a letter to Durfee, and a response was sent on his behalf informing Plaintiff that "[m]aintenance and outside contractors continue to work on the remediation of the C2 bathroom." ECF No. 1 at 20–21. This response is insufficient to establish Durfee's personal

6

involvement. *See Vega v. Artus*, 610 F. Supp. 2d 185, 199 n.13 (N.D.N.Y. 2009) ("Prison supervisors are entitled to refer letters of complaint to subordinates, and rely on those subordinates to conduct an appropriate investigation and response, without rendering the supervisors personally involved in the constitutional violations alleged in the letters of complaint."). Additionally, Stitch's failure to respond to Plaintiff's letter of complaint "is insufficient to establish personal involvement [especially when] there is no other showing that [defendant] knew of or directly participated in any alleged violation." *Abbas v. Senkowski*, No. 03-CV-476, 2005 WL 2179426, at *2 (N.D.N.Y. Sept. 9, 2005). Further, his allegations with respect to Stitch that he failed to follow DOCCS's policies and procedures and train or supervise subordinates are wholly conclusory and thus insufficient. *See Alfaro Motors, Inc. v. Ward*, 814 F.2d 883, 887 (2d Cir. 1987) ("[I]t is well settled that to state a civil rights claim under [Section] 1983, a complaint must contain specific allegations of fact which indicate a deprivation of constitutional rights; allegations which are nothing more than broad, simple, and conclusory statements are insufficient to state a claim under [Section] 1983."). Without more, Plaintiff's allegations fail to establish these Defendants' personal involvement in any alleged violation and therefore any claims against them are subject to dismissal.

    C.    *Defendants Kaplen & Schmidt Electrical, Cogenic Mechanical, Betlem Heating and Aircooling*

Plaintiff names Kaplen & Schmidt Electrical, Cogenic Mechanical, and Betlem Heating and Aircooling in this action because they knowingly "did a poor and ruch [sic] (JOB) in working in the (C-2) housing unit," which left Plaintiff and others in an unsafe, hazardous, unhealthy, and unsanitary environment. ECF No. 1 at 7–9. In order to recover in an action under Section 1983, a plaintiff must show a deprivation of his constitutional or statutory rights by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Bryant v. Maffucci*, 923 F.2d 979, 982–

7

83 (2d Cir. 1991). In order to act under color of state law, a person must have exercised power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Polk County v. Dodson*, 454 U.S. 312, 317–18 (1981) (quoting *United States v. Classic*, 313 U.S. 299, 326 (1941)). "Actions of a private entity are attributable to the State if 'there is a sufficiently close nexus between the State and the challenged action of the . . . entity so that the action of the latter may be fairly treated as that of the State itself.'" *United States v. Stein*, 541 F.3d 130, 146 (2d Cir. 2008) (omission in original) (quoting *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351 (1974)).

As alleged, these Defendants appear to be private parties who cannot be said to be "acting under color of state law." *Rojas v. Alexander's Dep't Store, Inc.*, 924 F.2d 406, 408 (2d Cir. 1990). Alternatively, even assuming these Defendants were acting under color of state law, Plaintiff has not established any underlying constitutional violations, as more fully explained, below. Accordingly, the Complaint must be dismissed as to these Defendants.

### D.     *Conditions of Confinement Claims*

Plaintiff alleges that he was exposed to mold in the C-2 unit showers and was exposed to cold air from the windows in his housing unit. ECF No. 1 at 4, 9–10. The Court liberally construes Plaintiff's allegations as raising conditions of confinement claims under the Eighth Amendment. The standard for determining whether a plaintiff has stated an Eighth Amendment claim based on the conditions of his confinement is whether the inmate can show that prison officials acted with "deliberate indifference." *Farmer v. Brennan*, 511 U.S. 825, 828 (1994). Under this standard, a plaintiff's allegations must show that the deprivation is, objectively, "sufficiently serious;" the "prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities." *Id.* at 834 (internal quotation marks omitted). Moreover, the plaintiff must allege

that the officials acted with deliberate indifference in that they "kn[ew] of and disregard[ed] an excessive risk to inmate health or safety." *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994) (internal quotation marks omitted).

Plaintiff alleges that he was exposed to mold and mildew in the showers beginning in September 2018. ECF No. 1 at 4. In November 2018, he verbally complained to a correctional officer, filed a grievance, and a maintenance crew was sent to the unit but they "did nothing for about two or three weeks." *Id.* at 5, 8. The mold problem was resolved in July 2019. *Id.* at 13. While the presence of dangerous mold and mildew in the shower may meet the objective prong, *see Barreto v. County of Suffolk*, 762 F. Supp. 2d 482, 493 (E.D.N.Y. 2010), Plaintiff's allegations do not support an inference that Defendants imposed the conditions with deliberate indifference and therefore must be dismissed. For example, George called maintenance in response to Plaintiff's verbal complaint and, in response to his grievance, the Inmate Grievance Resolution Committee acknowledged there was mold or mildew present in the shower and stated that maintenance was addressing the issue and that "[a] plan to replace the drywall has been requested." ECF No. 1 at 24.

Plaintiff claims Yehl moved him to the C-2 housing unit and "should have waited until he check[ed] [the C-2 unit showers himself] to see if it was a safe [e]nvironment." ECF No. 1 at 6–7. Similarly, Plaintiff alleges the State Inspectors "didn't check every[]thing in the housing [u]nit to make sure that every[]thing was in working order and safe to put Plaintiff and others in." *Id.* at 7. The Court assumes without deciding that an official responsible for moving prisoners into an unsafe environment could be found deliberately indifferent, but Plaintiff has failed to plausibly allege that Yehl and the State Inspectors could have known that the environment was unsafe. Plaintiff alleges that the C-2 housing unit was newly refurbished and that he did not start to notice

9

the build up of "black soot/mold" until "*after* two weeks." ECF No. 1 at 4 (emphasis added). Accordingly, Plaintiff has not plausibly alleged that Yehl and the State Inspectors "kn[ew] of and disregard[ed] an excessive risk to inmate health or safety." *Hathaway*, 37 F.3d at 66.

Similarly, Plaintiff's allegations that he was exposed to cold air must also be dismissed. "An Eighth Amendment claim may be established by proof that the inmate was subjected for a prolonged period to bitter cold." *Gaston v. Coughlin*, 249 F.3d 156, 164 (2d Cir. 2001). Here, Plaintiff also states that windows in the unit needed to be repaired for two years, complaining that cold air penetrated the windows during the winter and that it was cold in the housing units' sleeping and dayroom areas. ECF No. 1 at 9–10.

Even if these allegations met the objective prong, Plaintiff has not alleged Defendants were deliberately indifferent to the condition. *See Tafari v. McCarthy*, 714 F. Supp. 2d 317, 358 (N.D.N.Y. May 24, 2010) ("A prison official demonstrates deliberate indifference to inhumane conditions of confinement where he 'knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). Each Defendants' alleged personal involvement in the violation is unclear. Plaintiff merely alleges that "Stitch and all lower ranking supervisors/officers/Staff kn[e]w of" the cold air exposure issue, ECF No. 1 at 9–10, but this allegation is simply not specific enough to plausibly allege each Defendants' actual knowledge of the allegedly cold conditions. Plaintiff names Defendants with vastly disparate job duties, and it is implausible that each would have knowledge of the cold condition absent more specific allegations. Further, Plaintiff does not allege what each Defendant did or did not do with their alleged knowledge of the cold conditions. *See Clark v. Gardner*, 256 F. Supp. 3d 154, 168

(N.D.N.Y. 2017) ("[T]he complaint does not allege any facts which even suggest that any of these defendants were aware of the temperature in his SHU cell, let alone that any of them acted with deliberate indifference to or refused to take steps to address this situation."); *Williams v. Carbello*, 666 F. Supp. 2d 373, 380 (S.D.N.Y. 2009) (holding that plaintiff failed to allege facts showing deliberate indifference where plaintiff wrote a letter to defendant regarding the issue, but did not allege "any facts regarding what [the defendant] did or did not do with th[e] information"); *see also Marable v. Kurtz*, No. 99-CV-1387, 2000 WL 1279763 (S.D.N.Y. Sept. 11, 2000) ("[P]laintiff fails to allege any specifics as to the participation in or awareness of any defendant of any of the alleged constitutional violations or that defendants were grossly negligent supervising subordinates."). Without more details regarding each individual Defendant's knowledge of and action regarding the cold air exposure issue, Plaintiff has not alleged a plausible claim. For all these reasons, Plaintiff's conditions of confinement claims relating to exposure to mold and cold air must be dismissed at this initial stage of litigation.

> E. *Claims Relating to Grievance Procedure*

Plaintiff alleges that Stitch never responded to several of Plaintiff's grievances. ECF No. 1 at 5, 9. To the extent that Plaintiff alleges the grievance procedures were not properly followed and his constitutional rights were accordingly violated, any such claim must be dismissed. Grievance procedures are simply prison procedures and, as such, prison inmates neither have a constitutionally protected right to a grievance procedure, nor, as a general rule, is there a federal right to have grievance procedures properly administered. *See, e.g.*, *Shell v. Brzezniak*, 365 F. Supp. 2d 362, 369–70 (W.D.N.Y. 2005) ("[I]nmate grievance programs created by state law are not required by the Constitution and consequently allegations that prison officials violated those procedures does not give rise to a cognizable § 1983 claim.").

*F.     Additional Claims*

Plaintiff alleges that he "was discriminated against" by unidentified law library officers who refused to allow him to work in the law library as a clerk. ECF No. 1 at 9. To the extent that Plaintiff is alleging he was denied access to the law library, such a claim must be dismissed. While it is true a correctional facility must provide an inmate with meaningful access to the courts, *Bounds v. Smith*, 430 U.S. 817, 828 (1977), in order to state a constitutional claim, a plaintiff must make a showing that he has suffered, or will imminently suffer, actual harm; that is, that he was "hindered [in] his efforts to pursue a legal claim." *Lewis v. Casey*, 518 U.S. 343, 351 (1996). Thus, Plaintiff must suffer an actual injury traceable to the challenged conduct of the named Defendants. A plaintiff may demonstrate actual injury if a "nonfrivolous legal claim had been frustrated or was being impeded." *Id*. at 352–53 (footnote omitted). Plaintiff has made no such claim here.

To the extent that Plaintiff's allegations can be construed to raise a claim that he was wrongly deprived of a job assignment, there is no due process right to a specific job assignment. *Green v. Fischer*, No. 11-CV-6063, 2015 WL 9460145, at *6 (W.D.N.Y. Dec. 23, 2015) ("Prisoners do not have a liberty or property interest in their prison jobs and therefore cannot state a due process claim related to changes in work assignments."). Accordingly, any such claim must be dismissed.

Alternatively, Plaintiff's allegations might be viewed as an equal protection claim. "To state an equal protection claim, a plaintiff must charge a governmental officer not only with deliberately interpreting a statute against the plaintiff, but also with singling him out alone for that misinterpretation." *Brady v. Town of Colchester*, 863 F.2d 205, 216 (2d Cir. 1988) (internal quotation marks omitted). To establish such intentional or purposeful discrimination, it is axiomatic that a plaintiff must allege that similarly-situated persons have been treated differently.

*See City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439 (1985); *Yale Auto Parts, Inc. v. Johnson*, 758 F.2d 54, 61 (2d Cir. 1985). Accordingly, a plaintiff raising a selective treatment claim must show that he was treated differently from other similarly-situated individuals and that the differential treatment was based on impermissible considerations. *See Skehan v. Vill. of Mamaroneck*, 465 F.3d 96, 110 (2d Cir. 2006), *overruled on other grounds Appel v. Spiridon*, 531 F.3d 138 (2d Cir. 2008). Here, the Complaint includes only a bald, conclusory allegation that Plaintiff was discriminated against and not allowed to work in the law library. ECF No. 1 at 9. As alleged, Plaintiff's Complaint is insufficient as a matter of law to state an equal protection claim and any such claim must be dismissed.

**IV.    Leave to File an Amended Complaint**

In general, district courts should give *pro se* litigants leave to amend their complaints before dismissing a complaint. *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000). The Court will, therefore, permit Plaintiff to file an amended complaint in which the necessary factual allegations, if in existence, are included to state a cause of action as detailed above. *Davidson v. Flynn*, 32 F.3d 27, 31 (2d Cir. 1994) ("[S]parse pleadings by a *pro se* litigant unfamiliar with the requirements of the legal system may be sufficient at least to permit the plaintiff to amend his complaint to state a cause of action."); Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires.").

Plaintiff has named several John and Jane Doe Defendants in this action. If Plaintiff does not know the name of a specific individual whom he contends is responsible for a particular constitutional deprivation, he may name this individual as a John or Jane Doe defendant, but he must provide sufficient information about the John or Jane Doe defendant to distinguish him or her from other individuals. Thus, in his amended complaint, Plaintiff should indicate the shifts and

specific locations worked by the John or Jane Doe Defendants on the date of the occurrence, provide physical descriptions of the John or Jane Doe Defendants, and include any other information which would tend to identify these Defendants.

### V.     Motion for Appointment of Counsel

Plaintiff has filed a motion for appointment of counsel. ECF No. 3. At the time of filing, Plaintiff was incarcerated (he is now living in a homeless shelter, ECF No. 4), and he does not have any funds or means of income to retain counsel. ECF No. 3. He states that he is unfamiliar with the applicable law. *Id.* at 2. Because Plaintiff's claims are being dismissed with leave to amend and it is not yet clear if Plaintiff will be able to assert any valid claims, the Court is currently unable to evaluate Plaintiff's request. *See Hodge v. Police Officers*, 802 F.2d 58, 61 (2d Cir. 1986) (setting forth factors courts to consider when determining whether to appoint counsel). Plaintiff's motion is accordingly denied without prejudice as premature.

### CONCLUSION

Plaintiff has met the statutory requirements of 28 U.S.C. § 1915(a). Accordingly, Plaintiff's request to proceed *in forma pauperis* is granted. For the reasons discussed above, Plaintiff's Complaint will be dismissed with prejudice pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A unless Plaintiff files an amended complaint **within 60 days of the date this Order is entered** in which he includes the necessary allegations as directed above and in a manner that complies with Rules 8 and 10 of the Federal Rules of Civil Procedure.

Plaintiff is advised that an amended complaint will **completely replace** his original Complaint in this action and "render[] it of no legal effect." *Int'l Controls Corp. v. Vesco*, 556 F.2d 665, 668 (2d Cir. 1977). Therefore, Plaintiff's amended complaint **must include all of the**

**allegations against the named Defendants** so that it may stand alone as the only complaint in this action.

IT HEREBY IS ORDERED, that Plaintiff's request to proceed *in forma pauperis* is granted; and it is further

ORDERED that Plaintiff's Motion for Appointment of Counsel is denied without prejudice; and it is further

ORDERED that Plaintiff is granted leave to file an amended complaint only as directed above **within 60 days of the date this Order is entered**; and it is further

ORDERED that if Plaintiff does not file an amended complaint as directed above, the Complaint is dismissed with prejudice; and it is further

ORDERED that in the event the Complaint is dismissed because Plaintiff has failed to file an amended complaint, the Court hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Order would not be taken in good faith. *Coppedge v. United States*, 369 U.S. 438 (1962). Further requests to proceed on appeal *in forma pauperis* should be directed on motion to the United States Court of Appeals for the Second Circuit in accordance with Rule 24 of the Federal Rules of Appellate Procedure.

IT IS SO ORDERED.

Dated: June 26, 2020
      Rochester, New York

                                              HON. FRANK P. GERACI, JR.
                                                     Chief Judge
                                            United States District Court